UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 14-80704- DHW
 Chapter 7
DANNY JOE TARPLEY,

    Debtor.
_____

DANNY JOE TARPLEY,

    Plaintiff,

v.  Adv. Proc. 14-08008

SALLIE MAE, INC. and
EDUCATION CREDIT MANAGEMENT
CORPORATION (ECMC)

    Defendants.

## MEMORANDUM OPINION

On June 9, 2014, Danny Joe Tarpley, the debtor in the underlying chapter 7 bankruptcy proceeding, filed this complaint to determine the dischargeability of his student loan debts owing to Sallie Mae, Inc. and Education Credit Management Corporation (hereinafter collectively referred to as ECMC).[1] Tarpley contends that an undue hardship would result if he was required to repay the education loans, and hence, the loans are dischargeable under 11 U.S.C. § 523(a)(8).

---

[1] Tarpley filed this proceeding *pro se* on June 9, 2014. He amended the complaint, again *pro se*, on June 20, 2014 (Doc. #4). On April 1, 2015, Charles M. Ingrum, Jr. filed a notice of appearance as attorney on behalf of Tarpley (Doc. #35).

Trial of this matter was held in Opelika, Alabama on January 22, 2016. At the trial, Tarpley was represented by his attorney, Charles M. Ingrum, Jr., and ECMC was represented by its counsel, Robert A. Morgan. For the reasons that follow, Tarpley's debts to ECMC will be held nondischargeable.

## Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because the matter at issue here involves a determination of the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(I) thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Findings of Fact

Tarpley, who is now 53 years old, attended the University of Texas at El Paso from 1991 through 1993. There, he took courses under a general curriculum which did not lead to a degree. He financed the cost of that education through loans provided by ECMC. In all, he received just over $13,000 in student loans. Although Tarpley paid approximately $22,000 toward his student loan obligations, as of the date of bankruptcy, the debt to ECMC had a balance of over $39,000.

Since leaving school, Tarpley has been employed as a deputy sheriff, a tennis professional, and a bus driver. In 2010, Tarpley was involved in an accident that led to an injury of his left arm and ended his ability to compete as a touring tennis professional. Now, his only involvement with the sport of tennis is the operation of a web-site from which he generates some income for re-stringing and re-gripping rackets. Tarpley testified that he earns an average of $500 a month from this web-site derived, tennis endeavor.

Tarpley's main source of income comes from his employment as a school bus driver for the Auburn, Alabama City Schools. That employment requires him to work about four hours each day; two in the morning and two in the afternoon.[2] He does not work during the three summer months in which school is not in session. In order to drive the school bus, Tarpley holds a Class B driver's license. With additional training, he could upgrade that license to a Class A and be able to make commercial hauls. Although this would significantly increase his income, Tarpley is not interested in doing so because that would require him to be absent from home for extended periods. Tarpley's net income from his bus driving work averages $890 per month. *See* Plaintiff Exhibit 1.

Hence, Tarpley's net income from both sources is $1,390 per month.

---

[2]Tarpley occasionally works additional time as a bus driver, driving students to and from field trips.

Although Tarpley is married, his wife has no current income. Nevertheless, she is actively seeking employment. Tarpley's 17 year old stepson, who is a high school student, recently obtained part-time work from which he earns about $400 each month. To date, Tarpley has not required his stepson to contribute any of those earnings toward household expenses.

Tarpley's household expenses average just over $2,500 per month. In Plaintiff's Exhibit 3, Tarpley itemizes those expenses as follows:

| | |
|---|---|
| Mortgage | $ 658.81 |
| Home Maintenance | $ 75.00 |
| Electric Bill/Heat Pump Payment | $ 367.00[3] |
| Water | $ 53.00 |
| Internet | $ 39.00 |
| Cable/Dish | $ 79.00 |
| Cell Phones | $ 200.00 |
| Food | $ 433.00 |
| Personal Expenses | $ 100.00 |
| Clothing/Laundry | $ 75.00 |
| Automobile Insurance | $ 50.00 |
| Gasoline | $ 150.00 |
| Automobile Maintenance | $ 100.00 |
| Medical Bills | $ 50.00 |
| Charitable Contributions | $ 10.00 |
| Wife's Credit Cards | $ 100.00 |
| | |
| Total Expenses | $ 2,539.81 |

Therefore, if Tarpley's average monthly net income is about $1,400 and his

---

[3] About $200 of the monthly electric bill is actually for the payment of a loan secured by Tarpley's air conditioner and heat pump. Thus, the actual average cost for power is about $160 per month.

average monthly expense is about $2,500, he is incurring an average monthly deficit of approximately $1,100. Tarpley testified that the deficit is not actually made up but is being deferred by the late payment of household bills.

Tarpley consolidated his student loans in 1994. He is not eligible to reconsolidate and take advantage of a lower interest rate. Further, Tarpley has not pursued an application for participation in an income contingent repayment plan available to those with student loans.

## Conclusions of Law

Ordinarily, student loan debts are not dischargeable in bankruptcy. An exception to this rule exists when the repayment of the student loan would result in an undue hardship to the debtor and the debtor's dependents if the loan repayment was required.[4]

The phrase "undue hardship" is not defined by the Bankruptcy Code. The court of appeals for this circuit in *Hemar Insurance Corporation of America v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003) has, however, adopted the three-part test for

---

[4]The statute provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
    (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.
11 U.S.C. § 523(a)(8).

determining undue hardship originally announced by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir. 1987). The so-called *Brunner* test for undue hardship requires the debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396).

### Brunner Test's First Prong: Minimal Living Standard

The first prong of the *Brunner* test requires the court to consider the debtor's current income and expenses to determine whether he can maintain a minimal standard of living if required to repay the student loans. While there is no precise definition of the phrase "minimal standard of living," that standard does not condemn the debtor to a life of abject poverty. *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3rd Cir. 1995). On the other hand, the mere fact that repayment of the student loans would be difficult for the debtor is not enough to result in the discharge of the debts. *In re Faish*, F.3d at 306-07; *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. BAP 1999). In short, the hardship of repayment must be undue. Therefore, a

minimal standard of living lies somewhere between poverty and mere difficulty. In order to make this determination the court must examine the debtor's income and reasonable expenses in light of his particular circumstances to determine whether repayment would impose an undue hardship. *Ivory v. United States (In re Ivory)*, 269 B.B. 890 (Bankr. N.D. Ala. 2001).

In this case, Tarpley's expenses exceed his income by approximately $1,100. While ECMC has called into question the reasonableness of Tarpley's expenses for cell phones ($200 per month) and his payment of his wife's credit card debts ($100 per month), the total elimination of those expenses would not come near to erasing his monthly deficit. All other expenses claimed by Tarpley are reasonable and without extravagance. Therefore, the court must conclude that Tarpley has proven the first prong of the *Brunner* test. At present, he cannot maintain a minimal standard of living if forced to repay the debt to ECMC.

**Brunner Test's Second Prong: Persistent Circumstances**

The second prong of the *Brunner* test requires the court to look into the foreseeable future and determine whether the debtor's inability to repay the loans and maintain a minimal standard of living is likely to persist. To satisfy this prong there must be some additional circumstance beyond the mere inability to repay. *In re Nys*, 308 B.R. 436, 444 (B.A.P. 9th Cir. 2004) aff'd, 446 F.3d 938 (9th Cir. 2006). Although a number of circumstances are considered, a court must evaluate the

difference between a debtor's "temporary dire financial situation" and a "certainty of hopelessness." *In re Vuini*, 2012 WL 5554406, at *5 (Bankr. M.D. Fla. Nov. 14, 2012)(citing *In re Matthews-Hamad*, 377 B.R. 415, 422 (Bankr. M.D. Fla. 2007)). Examples of circumstances demonstrating a certainty of hopelessness include an "irreversible illness or disability, an utter lack of usable job skills, or the responsibility of caring for a large number of dependents." *Id.* The court concludes that the debtor's present inability to repay does not rise to the level of certain hopeless, nor is it likely to persist. Specifically, the four reasons discussed below show that Tarpley's ability to repay and his standard of living are likely to improve.

First, while Tarpley's income as a bus driver is currently insufficient to meet his expenses, his time spent working is limited to approximately four hours a day for nine months a year. The three summer months in which Tarpley does not work at all provide him ample opportunity to find additional employment. Although at trial Tarpley suggested it may be difficult to get an additional job to coincide with his schedule during the months in which school is in session, he offered no reasons as to why he could not seek alternative employment during the summer months nor did he mention any past failed attempts to do so. A debtor's desire to maintain a current position is not evidence of undue hardship. *In re Bush*, 450 B.R. 235, 242 (Bankr. M.D. Ga. 2011)("Numerous courts have held that a debtor cannot meet the second prong of the *Brunner* test where the debtor has voluntarily limited his or her

employment opportunities and income due to personal choice and failed to pursue higher paying jobs.")(citing *Alderete v. Educ. Credit Mgmt. Corp.* (*In re Alderete*), 412 F.3d 1200 (10th Cir. 2005); *Oyler v. Educ. Credit Mgmt. Corp.,* (*In re Oyler*), 397 F.3d 382 (6th Cir. 2005); *O'Hearn v. Educ. Credit Mgmt. Corp.* (*In re O'Hearn*), 339 F.3d 559 (7th Cir. 2003); *Kehler v. Nelnet Loan Services* (*In re Kehler*), 326 B.R. 142 (Bankr. N.D. Ind. 2005)). *See also In re Birrane*, 287 B.R. 490, 498 (B.A.P. 9th Cir. 2002)(debtor working part-time as a dance instructor failed to show she was entitled to an undue hardship discharge because she was employable in other areas).

Second, Tarpley has an opportunity to improve his Class B, CDL license to a more marketable Class A, CDL license with additional training. To date, Tarpley has not attempted to obtain a Class A, CDL license. Tarpley testified that his injuries did not negatively affect his driving and that he was capable of doing so full time. Tarpley's only opposition of record was that he wished to stay near family, and the commercial hauling job opportunities for those with a Class A, CDL license typically involved extensive traveling. The desire to remain near family is not an "additional circumstance" contemplated by the second prong of *Brunner*. Thus, declining to pursue the opportunity is a circumstance of the debtor's own choice. Choosing a low-paying job cannot merit undue hardship relief. *See Fischer v. State Univ. of New York* (*In re Fischer*), 23 B.R. 432, 434 (Bankr. W.D. Ky. 1982); see also *In re Oyler*, *supra*, (debtor who worked as a pastor of a small church, instead of

maximizing his earnings, failed to establish that repayment of the student loans would impose an undue hardship).

Further, Tarpley is married. His wife is currently unemployed, but is actively seeking employment. A spouse's income contributes to a debtor's ability to maintain a minimal standard of living. *In re Gesualdi,* 505 B.R. 330, 339-40 (Bankr. S.D. Fla. 2013); *In re Greco,* 251 B.R. 670, 679 (Bankr. E.D. Pa. 2000). Even if Mrs. Tarpley gained only part-time work it would lead to a significant increase in the household income. Tarpley did not offer any evidence that Mrs. Tarpley was physically or mentally incapable of finding employment. The potential earnings that Mrs. Tarpley could contribute demonstrate a potential increase in standard of living.

Finally, Tarpley's stepson and only dependent is 17 years old. The stepson is currently employed, and does not contribute to the household finances. Tarpley continues to bear expenses on behalf of the stepson. However, Tarpley's stepson is nearing the age of majority, and Tarpley will no longer be financially responsible for the obligations of the stepson. The emancipation of the stepson will lead to a decrease in expenses for the Tarpley household. Thus, combined with the several opportunities to increase income outlined above, Tarpley's difficult financial situation is unlikely to continue into the foreseeable future. Because the situation is not likely to persist, Tarpley's circumstances fail to meet the *Brunner* standard to qualify for undue-hardship discharge.

## Brunner Test's Third Prong: Good Faith Effort to Repay

Under this prong of the undue hardship test, the debtor must prove that he as made a good faith effort to repay his student loans. Tarpley's principal loans from ECMC totaled about $13,000. In all, he has made payment on the ECMC debts of around $22,000. Hence, he has fully repaid the principal amount of the loans plus about $9,000 in interest thereon. There nothing in this record to lead the court to find that Tarpley did not make payments on the loans when he had the ability to do so.

Further, Tarpley's failure to pursue participation in an income contingent repayment plan does not lessen his good faith effort to repay. The Eleventh Circuit has rejected a *per se* rule that a debtor cannot show good faith where he or she has not enrolled in an income contingent repayment program. *Educational Credit Management Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1327 (11th Cir. 2007). "Even extremely low repayment amounts through the use of such programs do not necessarily require a debtor to enroll in order to establish good faith." *In re McLaney*, 375 B.R. 666, 667 (M.D. Ala. 2007)(citing *In re Durrani*, 311 B.R. 496, 506 (Bankr. N.D. Ill. 2004). Therefore, the court finds that Tarpley has proven the third prong of the *Brunner* test. He has made a good faith effort to repay the student loans.

## Conclusion

In order for the "undue hardship" exception of 11 U,S.C. § 523(a)(8) to apply, Tarpley must have proven all three elements of the *Brunner* test. Because he has

failed to prove by a preponderance of the evidence that his current minimal standard of living is likely to persist into the foreseeable future, his debt to ECMC cannot be discharged in bankruptcy. By separate order, judgment will enter in favor of the defendants, ECMC, holding Tarpley's debt nondischargeable.

Done this the 2nd day of February, 2016.

*Dwight A. Williams, Jr.*

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Danny Joe Tarpley, Plaintiff
   Charles M. Ingrum, Jr., Plaintiff's Attorney
   Robert A. Morgan, Defendants' Attorney